Jonathan Shub (SBN 237708)
Kevin Laukaitis (admitted *pro hac vice*)
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiffs and the Class*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA CHACON and LESLIE GREEN, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>       v.<br><br>CVS PHARMACY, INC.,<br><br>                              Defendant. | Case No.: 5:22-CV-00983-EJD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Sandra Chacon and Leslie Green ("Plaintiffs"), on behalf of themselves and all others similarly situated, brings this class action against Defendant, CVS Pharmacy, Inc. ("Defendant" or "CVS"), and alleges on personal knowledge, investigation of their counsel, and on information and belief as follows:

**INTRODUCTION**

1.      Defendant, CVS, offers a variety of over-the-counter products including transdermal products, pain relief products, and skin care products. Defendant's over-the-counter lidocaine products include a range of external pain-relieving Products and creams for pain associated with or caused by ailments such as arthritis, backache, muscle strains, sprains, and bruises.

2.      Particularly, Defendant sells, markets, and distributes "CVS Health" Maximum Strength Lidocaine Pain Relieving patches, creams, roll-ons, sprays, and menthol lidocaine products (the "Products").[1]

3.      Nearly every individual suffers muscle aches and pains and seeks relief for this common problem.

4.      When consumers purchase pain-relieving products, the strength of the dose is an important purchasing consideration. In fact, consumers willingly pay a premium for pain-relieving products that have strong doses.[2]

5.      Defendant takes advantage of this consumer preference for strong doses and/or

---

[1] The products include but are not limited to CVS Health-branded: Lidocaine Pain-Relieving Unscented Patches, Maximum Strength Lidocaine Pain Relief Cream, Maximum Strength Lidocaine Plus Spray, Maximum Strength Lidocaine Pain Relief Roll-On with Lavendar Essential Oil, XL Maximum Strength Lidocaine Pain Relief Patch, Maximum Strength Lidocaine Cream, and Maximum Strength Pain Relief Patch (the "Products") Plaintiffs reserve the right to amend the Complaint to revise the list of products subject to this Complaint.

[2] Defendant's competitors sell 4% lidocaine pain reliving Products for approximately $0.86 per patch while Defendant sells the 'maximum strength' 4% lidocaine Products sell for $2.25 per patch. *See* https://www.walgreens.com/store/c/walgreens-lidocaine-Products/ID=300394242-product (for the competitor pricing version, last accessed February 16, 2022) and https://www.cvs.com/shop/cvs-health-lidocaine-pain-relieving-uncented-Products-3-15-16-x-5-1-2-10-cm-x-14-cm-6-ct-prodid-371271 (for Defendant's 'maximum strength' version, last accessed February 16, 2022). Plaintiffs only use the pricing in the previous paragraph as an example to plausibly plead that Defendant does indeed charge a large premium for its Products. The specific premium on a granular level will be determined later in the case by an expert.

maximum strength by prominently representing as much the one place every consumer looks when purchasing a product – the packaging and labels themselves. In fact, Defendant touts its representation and claim right on the front of its Products' labels that the Products are "Maximum Strength" lidocaine products.

6.     Consumers including Plaintiffs lack the scientific knowledge necessary to determine whether the Products are "Maximum Strength" lidocaine products or to ascertain the true nature of the quality or strength of the Products. As such, reasonable consumers must and do rely on manufacturers, like Defendant, to be honest and transparent and to properly disclose on the packaging all material information regarding the Products and their dose and strength.

7.     However, Defendant makes this "Maximum Strength" representation in a knowingly false and deceptive manner because Defendant's Products contains only 4% lidocaine; with regard to "Patch" products, similar prescription Products manufactured by at least one of Defendant's competitors contains 5% lidocaine; with regard to "cream" products, similar creams manufactured by at least one of Defendant's competitors contain 5% lidocaine and are also available over-the-counter as Defendant's Products are.[3]

8.     Moreover, Defendant has not only represented that its Products are "Maximum Strength" lidocaine products, but it has also omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

9.     Defendant sells and distributes the Products employing a marketing and advertising campaign centered around claims that appeal to consumers who Defendant knows seek out strong and/or maximum doses of lidocaine to relieve their back pain and aches by touting their Products as "Maximum Strength". As such, reasonable consumers, like Plaintiffs, reasonably believe that they are purchasing a Lidocaine product which is at maximum strength,

---

[3] Regarding lidocaine cream products, at least one of Defendant's competitors offers a prescription lidocaine cream with a 5% concentration. *See* https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=88ca9cba-0c4a-482f-b502-ceefdb1bfbcd&type=display, *see also* https://www.drugsdepot.com/store.php/drugsdepot/pd9612 367/lidocaine-5-ointment-3544-gm-by-fougera-amp-co (Last Accessed February 16, 2022).

i.e. the highest dosage they can buy.

10.     Defendant's knowing, multiple, and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that deceives and harms consumers and the public.

11.     Accordingly, Plaintiffs bring this suit on behalf of themselves and similarly situated consumers who purchased Defendant's Products. Plaintiffs and Class Members were damaged because they would not have purchased and/or would not have paid a premium for Defendant's Products had they known the true facts regarding the Products' "Maximum Strength" representations and omissions.

12.     For all the reasons set forth herein, including but not limited to Defendant's misrepresentations and omissions regarding its "Maximum Strength" claims, Plaintiffs seek relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's Products, for: (i) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); (ii) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"); (iii) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"); (iv) violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505, *et seq*. ("ICFA"); (v) violation of Illinois Uniform Deceptive Trade Practices Act, ILCS §§ 510/2, *et seq.* ("ILCS"); (vi) breach of warranty; (vii) common law fraud; and (viii) unjust enrichment.

## THE PARTIES

13.     Plaintiff Sandra Chacon is a resident and citizen of California residing in San Jose, California. She purchased CVS Maximum Strength Lidocaine Pain Relieving Patch product on numerous occasions during all applicable statute of limitations periods, most recently in January 2022. Plaintiff Chacon purchased the Products at a CVS brick and mortar retail location in San Jose, California.

14.     Plaintiff Leslie Green is a resident and citizen of Illinois residing in Evergreen Park, Illinois.  Plaintiff Green purchased the Products at a CVS brick and mortar retail location in Evergreen Park, Illinois.

3

15.     Defendant CVS is a Rhode Island corporation, with its principal place of business and headquarters located at One CVS Drive, Woonsocket, RI 02895. As such, Defendant is a resident and citizen of Rhode Island. Defendant CVS markets, distributes, and sells the Products to consumers throughout the United States through their brick-and-mortar locations and online through Defendant's website.

16.     Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

16.     This Court has personal jurisdiction over Defendant in this matter. The acts and omissions giving rise to this action occurred in the state of California. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products in this state, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiffs and putative Class Members, which arose out of the acts and omissions that occurred in the state of California, during the relevant time period, at which time Defendant were engaged in business activities in the state of California.

17.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states.

18.     Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has

4

sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Products in this District. Furthermore, Plaintiff Chacon resides in this District.

## **FACTS COMMON TO ALL CLASS MEMBERS**

20.    Lidocaine is the active ingredient in Defendant's Products, and it forms the basis for Defendant's "Maximum Strength" misrepresentations on the Products' front labeling, omissions, and overall advertising and marketing campaign.

21.    "Lidocaine belongs to the family of medicines called local anesthetics. This medicine prevents pain by blocking the signals at the nerve endings in the skin."[4]  Lidocaine is commonly used in products such as Defendant's Products to help with body soreness and pain.

22.    At all relevant times, Defendant has marketed its Products in a consistent and uniform manner nationwide. Defendant sells the Products in all 50 states in their brick-and-mortar stores and through their online store.

23.    One attribute that consumers specifically value when purchasing any pain-relieving product is the strength of the dose.[5]

---

[4] https://www.mayoclinic.org/drugs-supplements/lidocaine-topical-application-route/description/drg-20072776 (last accessed February 16, 2022)

[5] Strength of dose is so important that nearly every manufacturer of common pain-relieving products emphasize it.  *See*    https://www.tylenol.com/products/tylenol-extra-strength-caplets?utm_source=google&utm_medium=cpc&utm_campaign=GO-USA-ENG-PS-Tylenol-BC-EX-RN-Brand-Core+EST&utm_content=Core&utm_term=extra+tylenol&gclid=Cj0KCQjw i7yCBhDJARIsAMWFScPTqYK8J3go53nS0bag4R7EVHQZ7ogd_3MoAMUKWoVzH4FMj8sQj9kaAtbXEALw_wcB&gclsrc=aw.ds&? (Tylenol extra strength); *see also* https://www.bayer aspirin.com/products/bayer-extra-strength-aspirin (extra strength aspirin).

24.    Aware of this consumer preference, Defendant specifically advertises its Products as "MAXIMUM STRENGTH" Lidocaine Products. For example, below is an image of the CVS Health Maximum Strength Lidocaine Pain Relieving Patch front label[6]:



25.    As shown above, the "MAXIMUM STRENGTH" representation is located on the very top of the front label of the Products in bold, yellow lettering that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiffs and Class Members.

26.    Defendant, however, is well aware that its Products are not a "maximum strength" or maximum strength lidocaine products and deceives trusting reasonable consumers like

---

[6] The labels shown in the complaint represents the labeling present, upon information and belief, of each product at the time of filing and that Plaintiff and the proposed classes read and relied on. https://www.cvs.com/shop/cvs-health-lidocaine-pain-relieving-uncented-Products-3-15-16-x-5-1-2-10-cm-x-14-cm-6-ct-prodid-371271; (last accessed February 16, 2022).

Plaintiffs to believe that they are in fact purchasing such Products while omitting from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

27.    Indeed, Defendant's over-the-counter Products contain only 4% lidocaine while competing prescription lidocaine products contain 5% lidocaine.[7]  This is not an insignificant difference.  Indeed, 5% lidocaine represent a 25 percent increase in the dosage of lidocaine from Defendant's Products.

28.    So, consumers can obtain a stronger dose comparable lidocaine product that is available in the market.

29.    As such, Defendant's Products are not "Maximum Strength" lidocaine products as advertised.

30.    But rather than accurately advertise its Products through its labeling, Defendant preys on consumers' desire for maximum pain relief to drive substantial profits.

31.    All reasonable consumers, including Plaintiffs, read and relied on CVS's "Maximum Strength" representations when purchasing the Products.

32.    Defendant's "Maximum Strength" representation was material to Plaintiffs' and Class Members' decision to purchase the Products.

33.    Defendant's marketing efforts are made in order to – and do in fact – induce consumers to purchase the Products at a premium because consumers believe they are getting lidocaine products with "Maximum Strength."

34.    As shown throughout this Complaint, however, Defendant's Products are **not** "Maximum Strength" lidocaine products. Defendant's representations and omissions are false and misleading.

35.    Defendant intended for Plaintiffs and Class Members to be deceived or mislead by its misrepresentations and omissions.

---

[7] "This article discusses lidocaine 5% patch products available by your doctor's prescription. While there are similar over-the-counter varieties available, those contain a lower percentage of lidocaine."  *See*  https://www.spineuniverse.com/treatments/medication/prescription-lidoderm-Products-may-help-relieve-back-pain (last accessed February 16, 2022)

7

36.     Defendant's deceptive and misleading practices proximately caused harm to Plaintiffs and the Classes.

37.     Plaintiffs and Class Members would not have purchased the Products or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

## PLAINTIFFS' FACTUAL ALLEGATIONS

38.     Plaintiff Chacon purchased the Products in January 2022 from a CVS brick and mortar store in San Jose, California for approximately $13.49 for the Products. Before purchasing the Products, Plaintiff Chacon reviewed information about the Products on the Products' labels and the fact that the Products were being sold for personal use, and not resale. At the time of purchasing her Products, Plaintiff Chacon also reviewed the accompanying disclosures, warranties, and marketing materials, and understood them as representations and warranties by CVS, specifically the "MAXIMUM STRENGTH" Representations. Plaintiff Chacon relied on these representations and warranties in deciding to purchase CVS's Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products had she known these representations were not true.

39.     Plaintiff Green purchased the Products in May 2022 from a CVS brick and mortar store in Evergreen Park, Illinois. Before purchasing the Products, Plaintiff Green reviewed information about the Products on the Products' labels and the fact that the Products were being sold for personal use, and not resale. At the time of purchasing her Products, Plaintiff Green also reviewed the accompanying disclosures, warranties, and marketing materials, and understood them as representations and warranties by CVS, specifically the "MAXIMUM STRENGTH" Representations.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products had she known these representations were not true.

40.     Here, Plaintiffs did not receive the benefit of their bargain because CVS's MAXIMUM STRENGTH" representations are false.

41.     As a result of CVS's concealment, Defendant's "Maximum Strength"

8

Representations and omissions, Plaintiffs purchased the Products.  Had Plaintiffs known the true

nature of the Products, they would not have purchased the Products.

### FED. R. CIV. P. 9(b) ALLEGATIONS

42.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging

fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have

satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient

particularity.

43.     **WHO:** Defendant, CVS Pharmacy, Inc., made material misrepresentations and/or

omissions of fact in its labeling and marketing of the Products by representing that the Products

are "Maximum Strength" lidocaine products.

44.     **WHAT:** Defendant's conduct here was and continues to be fraudulent because it

has the effect of deceiving consumers into believing that the Products are "Maximum Strength"

lidocaine products. Defendant omitted from Plaintiffs and Class Members that the Products are

not "Maximum Strength" lidocaine products because other lidocaine products exist in the market

that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this

information is material to all reasonable consumers and impacts consumers' purchasing

decisions. Yet, Defendant has and continues to represent that the Products are "Maximum

Strength" lidocaine products when they are not, and has omitted from the Products' labeling the

fact that there are other prescription products available in the market that contain a higher

percentage of lidocaine (i.e. 5%).

45.     **WHEN:** Defendant made material misrepresentations and/or omissions detailed

herein, including that the Products are "Maximum Strength" lidocaine products, continuously

throughout the applicable Class period(s).

46.     **WHERE:** Defendant's material misrepresentations and omissions, that the

Products are "Maximum Strength" lidocaine products, were located on the very top of the front

label of the Products in bold yellow lettering that contrasts with the background of the packaging,

which instantly catches the eye of all reasonable consumers, including Plaintiffs and Class

9

Members at the point of sale in every transaction. The Products are sold in Defendant's brick and mortar stores and online store in California and nationwide.

47.     **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Maximum Strength" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this Complaint, Plaintiffs and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

48.     **WHY:** Defendant misrepresented its Products as being "Maximum Strength" lidocaine products and omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiffs and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action on behalf of herself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

**National Class**: During the fullest period allowed by law, all persons in the United States who purchased the Products in the United States for personal use and not for resale.

**California Sub-Class**: During the fullest period allowed by law, all persons in the State of California who purchased the Products in the State of California for personal use and not for resale.

**Illinois Sub-Class**: During the fullest period allowed by law, all persons in the State of Illinois who purchased the Products in the State of Illinois for personal use and not for resale.

50.     Excluded from the Classes are (a) any person who purchased the Products for resale and not for personal or household use, (b) any person who signed a release of any

10

Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

51.     Plaintiffs reserve the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

52.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Classes may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

53.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

a.   Whether Defendant made the "MAXIMUM STRENGTH" Representations;

b.   Whether Defendant promoted the Products with false and misleading statements of fact and material omissions;

c.   Whether Defendant's "MAXIMUM STRENGTH" Representations are deceptive, unfair or misleading;

d.   Whether Defendant's actions and/or omissions violate California law;

e.   Whether Defendant's actions and/or omissions violate Illinois law;

f.   Whether Defendant's conduct violates public policy;

g.   Whether Defendant's acts, omissions or misrepresentations of material facts

11

constitute fraud;

h.   Whether Plaintiffs and putative members of the Classes have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts, omissions or misrepresentations of material facts;

i.   Whether Defendant was unjustly enriched at the expense of Plaintiffs and members of the putative Classes in connection with the Products;

j.   Whether Plaintiffs and members of the putative Classes are entitled to monetary damages and, if so, the nature of such relief; and

k.   Whether Plaintiffs and members of the putative Classes are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

54.   Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the putative Classes, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Classes as a whole. In particular, Defendant has, marketed, advertised, distributed and sold Products containing the Products' "MAXIMUM STRENGTH" Representations, which are false and misleading.

55.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of those of the absent Class Members in that Plaintiffs and the Class Members each purchased and used the Products and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiffs share the aforementioned facts and legal claims or questions with putative members of the Classes, and Plaintiffs and all members of the putative Classes have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiffs and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's false and deceptive Lidocaine Products "Maximum Strength" Representations, as alleged herein.

56.   **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiffs has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further,

12

Plaintiffs and their counsel are committed to the vigorous prosecution of this action. Plaintiffs do not have any conflicts of interest or interests adverse to those of putative Classes.

57.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiffs and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

58.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

59.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

      a.   The damages suffered by each individual members of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

      b.   Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

      c.   The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

      d.   Individual joinder of all members of the Classes is impracticable;

      e.   Absent a Class, Plaintiffs and members of the putative Classes will continue to

13

suffer harm as a result of Defendant's unlawful conduct; and

f.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and members of the putative Classes can seek redress for the harm caused by Defendant.

g.  In the alternative, the Classes may be certified for the following reasons:

   i.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant;

   ii.  Adjudications of claims of the individual members of the Classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

   **iii.**  Defendant has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")**
**(On Behalf of Plaintiff Chacon and the California Sub-Class)**

60.  Plaintiff Chacon repeats and realleges the allegations in the previous paragraphs as if fully set forth herein .

61.  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

62.  The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

14

63.    <u>Unlawful</u>: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

      a.    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

      b.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

      c.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA"_; and

      d.    The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.* (the "Sherman Law")

64.    For example, the Section 502(a) of the FDCA and the parallel Sherman Law declares that a drug or device is misbranded if its labeling proves false or misleading in any particular. For the reasons stated herein, Defendant's Products are labeled in a false and misleading manner.

65.    <u>Unfair</u>: Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.  Here, Defendant misrepresents the relative strength of the Products, in order to charge a premium price and differentiate the Products from its competitors. Such conduct not only injuries consumers, but puts honest competitors at a relative disadvantage. Such harm is not outweighed by any benefit to consumers as the marketing of false and misleading information is never beneficial to the market.

66.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

67.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have

avoided.

68.     Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

69.     As set forth herein, Defendant's "MAXIMUM STRENGTH" Representations stated on the Products' labeling and advertising is likely to mislead reasonable consumers to believe the "MAXIMUM STRENGTH" Representations regarding the Products are true. Additionally, the "MAXIMUM STRENGTH" Representations are material to a reasonable consumer such Representations differentiate the Products of its competition and provide a clear representation of the quality of the Products.

70.     Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

71.     Plaintiff Chacon and California Subclass Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information, in particular the "MAXIMUM STRENGTH" Representations on the Products' packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

72.     Defendant's conduct caused and continues to cause substantial injury to Plaintiff Chacon and California Subclass Members. Plaintiff Chacon and California Subclass Members have suffered injury in fact as a result of Defendant's unlawful conduct.  Plaintiff would not have purchased the Products, or paid less, had she known the truth of Defendant's representations.

73.     In accordance with Bus. & Prof. Code § 17203, Plaintiff Chacon seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

74.     Plaintiff Chacon and California Subclass Members also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT II
### California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500 ("FAL")
### (On Behalf of Plaintiff Chacon and the California Sub-Class)

75.     Plaintiff Chacon repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

76.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

77.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

78.     As alleged herein, CVS committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of it's Products and making "MAXIMUM STRENGTH" Representations. CVS knew or should have known that its advertising claims have not been substantiated and are misleading and/or false.

79.     CVS knew or should have known, through the exercise of reasonable care, that its "MAXIMUM STRENGTH" Representations were false and misleading and likely to deceive consumers and cause them to purchase CVS's Lidocaine Products.

80.     Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

81.     Plaintiff Chacon suffered injury in fact as a result of CVS's actions as set forth herein because she purchased the Products in reliance on CVS's false and misleading "MAXIMUM STRENGTH" Representations.  Plaintiff Chacon would not have purchased the Products, or paid less, had she known the truth of Defendant's representations.

82.     CVS's business practices as alleged herein constitute deceptive, untrue, and

17

misleading advertising pursuant to the FAL because CVS has advertised the Products in a manner that is untrue and misleading, which CVS knew or reasonably should have known, and omitted material information from its advertising.

83.     CVS profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

84.     As a result, Plaintiff Chacon, the California Sub-Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

85.     Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff Chacon, on behalf of herself and the California Sub-Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

**COUNT III**
**California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of Plaintiff Chacon and the California Sub-Class)**

86.     Plaintiff Chacon repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

87.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

88.     CVS's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff Chacon and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

          a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

          b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

          c. § 1770(a)(9): advertising goods with intent not to sell them as

18

advertised; and

    d. § 1770(a)(16): representing the subject of a transaction has been

supplied in accordance with a previous representation when it has not.

89.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

90.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

91.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), on February 18, 2022, Plaintiff Chacon provided a letter to Defendant noticing its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. Defendant did not respond to the letter within the period required, accordingly Plaintiff Chacon seeks monetary relief, including restitution and actual and punitive damages under the Consumers Legal Remedies Act.  Pursuant to California Civil Code §1780, Plaintiff Chacon further seeks injunctive relief, her reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT IV
### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 Ill. Comp. Stat. §§ 505, *et seq*.
### (On behalf of Plaintiff Green and the Illinois Subclass)

92.    Plaintiff Green repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

93.    Plaintiff Green bring this claim individually and on behalf of the Illinois Subclass.

94.    The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

95.    Plaintiff Green and other members of the Illinois Subclass, as purchasers of the Products, are consumers within the meaning of the ICFA given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

96.     Defendant knowingly concealed, suppressed, and consciously omitted material facts to Plaintiff Green and other members of the Illinois Subclass knowing that consumers would rely on the advertisements and packaging to purchase the Products.

97.     Plaintiff Green and the other Illinois Subclass members reasonably relied upon Defendant's omissions.

98.     Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

99.     Defendant violated the ICFA by, inter alia, representing that the Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

100.    Defendant advertised the Products with intent not to sell it as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

101.    Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

102.    Defendant engaged in misleading and deceptive advertising that represented that the Products were MAXIMUM STRENGTH."  Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Products would be impacted by its omissions and would reasonably believe Defendant's false and misleading "MAXIMUM STRENGTH" representations and omissions.

103.    Defendant intended that Plaintiff Green and each of the other Illinois Subclass members would reasonably rely upon the material omissions concerning the true nature of the Products.

104.    Defendant's concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff Green and each of the other Illinois Subclass members to be deceived about the true nature of the Products.

105.    As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff Green and the Illinois Subclass members have suffered ascertainable loss of money

20

caused by Defendant's omissions.

106.    Had they been aware of the true nature of the Products, Plaintiff Green and Illinois Subclass members either would have paid less for the Products or would not have purchased them at all.

107.    Plaintiff Green and the Illinois Subclass members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 815 ILCS 505/10a of the ICFA. Plaintiff Green and the Illinois Subclass members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

## COUNT V
### Violations of the Illinois Uniform Deceptive Trade Practices Act
### ILCS §§ 510/2, *et seq.*
### (On behalf of the Illinois Subclass)

108.    Plaintiff Green repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

109.    Plaintiff Green brings this claim individually and on behalf of the Illinois Subclass for violations of the Illinois Uniform Deceptive Trade Practices Act, ILCS §§ 510/2, et seq.

110.    Defendant constitutes a "person" as defined by 815 ILCS §§ 510/1(5).

111.    Defendant engaged in deceptive trade practices in the conduct of their business, in violation of 815 ILCS §§ 510/2(a), including:

112.    Defendant represented to Plaintiff Green and the Illinois Subclass that the Products had approval or characteristics that they did not have;

113.    Defendant represented to Plaintiff Green and the Illinois Subclass that the Products were of a particular standard, quality, or grade when they were actually of another;

114.    Defendant advertised to Plaintiff Green and the Illinois Subclass goods with intent not to sell them as advertised;

115.    Defendant engaged in other fraudulent or deceptive conduct creating a likelihood

21

of confusion or misunderstanding; and

116.   Defendant represented that consumers' purchases of the Products conferred or involved rights that the transactions did not have or involve.

117.   The facts that Defendant misrepresented, concealed, suppressed or omitted the "MAXIMUM STRENGTH" representations and omissions as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendant's products.

118.   Defendant's misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and was likely to deceive a consumer acting reasonably in the same circumstances.

119.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

120.   The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Green and Illinois Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

121.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Green and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products.

122.   Plaintiff Green and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT VI
### Fraud
**(On Behalf of the Nationwide and/or**
**California and Illinois Sub-Classes)**

123.    Plaintiffs repeat and reallege the allegations in the previous paragraphs as if fully set forth herein.

124.    Each state, including California and Illinois, recognize the tort of fraud and allow for the recovery of damages associated there with.  Accordingly, Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class or, in the alternative, on behalf the California and Illinois Subclasses, under the respective laws of these states, against Defendant CVS.

125.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

a.    **WHO:** Defendant, CVS Pharmacy, Inc., made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "Maximum Strength" lidocaine products.

b.    **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "Maximum Strength" lidocaine products. Defendant omitted from Plaintiffs and Class Members that the Products are not "Maximum Strength" lidocaine products because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Maximum Strength" lidocaine products when they are not, and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

23

c.     **WHEN:** Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "Maximum Strength" lidocaine products, continuously throughout the applicable Class period(s).

d.     **WHERE:** Defendant's material misrepresentations and omissions, that the Products are "Maximum Strength" lidocaine products, were located on the top of the front label of the Products in bold, yellow lettering that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiffs and Class Members, at the point of sale in every transaction. The Products are sold in Defendant's brick and mortar stores and online store nationwide.

e.     **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Maximum Strength" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this Complaint, Plaintiffs and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

f.     **WHY:** Defendant misrepresented its Products as being "Maximum Strength" lidocaine products and omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiffs and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

126.   As alleged herein, CVS knowingly made material misrepresentations and omissions regarding the Products on the Products' labeling and packaging in the Products' advertisements, and/or on its website, specifically the "MAXIMUM STRENGTH"

24

Representations alleged more fully herein.

127. Defendant, CVS, made these material "MAXIMUM STRENGTH" Representations and omissions in order to induce Plaintiffs and putative Class Members to purchase the Products.

128. Defendant, CVS, knew the "MAXIMUM STRENGTH" Representations regarding the Products were false and misleading but nevertheless made such representations through the marketing, advertising and on the Products' labeling. In reliance on these "MAXIMUM STRENGTH" Representations, Plaintiffs and putative Class Members were induced to, and did, pay monies to purchase the Products.

129. Had Plaintiffs and the Class known the truth about the Products, they would not have purchased the Products.

130. As a proximate result of the fraudulent conduct of Defendant, CVS, Plaintiffs and the putative Class paid monies to Defendant, through its regular retail sales channels, to which

131. Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## COUNT VII
### Unjust Enrichment
### (In the Alternative, and on Behalf of the Nationwide and/or Illinois and California Sub-Classes)

132. Plaintiffs repeat and reallege the allegations in the previous paragraphs as if fully set forth herein.

133. Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class and/or the California and Illinois Subclass against Defendant CVS .

134. Plaintiffs and putative Class Members conferred a benefit on Defendant when they purchased the Products, of which Defendant had knowledge. By its wrongful acts and omissions described herein, including selling the Products containing the "MAXIMUM STRENGTH" Representations and did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiffs and putative Class Members.

135. Plaintiffs' detriment and Defendant's enrichment were related to and flowed from

25

the wrongful conduct challenged in this Complaint.

136.   Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Products.

137.   Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant marketed, advertised, distributed, and sold the Products, and CVS misrepresented the nature of the Products, misrepresented their benefits and attributes, and knowingly marketed and promoted the Products with "MAXIMUM STRENGTH" Representations, which caused injuries to Plaintiffs and the Class because they would not have purchased the Products based on the same representations if the true facts concerning the Products had been known.

138.   Plaintiffs and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products on the same terms or for the same price had they known the true nature of the Products and the mis-statements regarding what the Products were and what they contained.

139.   Defendant either knew or should have known that payments rendered by Plaintiffs and putative Class Members were given and received with the expectation that the "MAXIMUM STRENGTH" Representations made by Defendant in advertising, on Defendant's websites, and on the Products' labels and packaging were true. It is inequitable for Defendant to retain the benefit of payments under these circumstances because the "MAXIMUM STRENGTH" Representations are not true.

140.   Plaintiffs and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

141.   When required, Plaintiffs and Class Members are in privity with Defendant because Defendant's sale of the Products was direct.

26

142.    As a direct result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## COUNT VIII
### BREACH OF EXPRESS WARRANTY,
#### Cal. Com. Code § 2313, 810 ILCS 5/2-318
#### (on Behalf of the Illinois and California Sub-Classes)

143.    Plaintiffs repeat and reallege the allegations in the previous paragraphs as if fully set forth herein.

144.    Defendant is and was at all relevant times a "merchant" with respect to the Products under Cal. Com. Code § 2104 and 810 ILCS 5/2-104, and a "seller" of the Products under Cal. Com. Code § 2103 and 810 ILCS 5/2-103.

145.    All Class members who purchased the Products in California are "buyers" within the meaning of Cal. Com. Code § 2103 and 810 ILCS 5/2-103.

146.    The Products are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105 and 810 ILCS 5/2-105.

147.    Defendant manufactured, packaged, marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and Class Members.

148.    The Products packaging and advertising constitute express warranties, became part of the basis of the bargain and are part of a standardized contract Plaintiff and Class Members on the one hand, and Defendant on the other.

149.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and Class Members, including providing Defendant with timely notice of the alleged breach of warranty.

150.    Plaintiffs and the Class purchased the Products directly from Defendant and are therefore in privity with Defendant.

151.    Defendant created the Products advertising and labeling at issue and warranted the

27

Products were "MAXIMUM STRENGTH" to Plaintiffs and Class Members.  Through these representations, Defendant made express warranties that the Products would conform to the representations.

152.    The representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

153.    Defendant breached the terms of this warranty, including the express warranties with Plaintiffs and Class Members.  Defendant utilized false and deceptive product labels and advertising to promote the sale of Products by representing that the Products were "MAXIMUM STRENGTH" when they were not, as alleged herein.

154.    On February 28, 2022, Plaintiff Chacon, through counsel, provided notice to Defendant, apprising Defendant of its breach of warranties. On June 3, 2022, Plaintiff Green, through counsel, provided electronic notice to Defendant apprising Defendant of its breach of warranties. Defendant has failed to adequately remedy the issues contained in Plaintiffs' letters.

155.    Defendant also has notice of the conduct related to its breach of warranties by way of the original complaint filed in this case on February 17, 2022.

156.    As a direct or proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered actual damages in the purchase of the Product because they would not have purchased the Product on the same terms, if at all, or would have paid less for the Product, had they known that the Products were not "MAXIMUM STRENGTH."

**COUNT IX**
**Violation Of Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301, et seq.**
**(on Behalf of the Illinois and California Sub-Classes)**

157.    Plaintiffs repeat and reallege the allegations in the previous paragraphs as if fully set forth herein.

CASE NO.: 5:22-CV-00983-EJD

158.    As previously alleged, this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over Plaintiffs' Magnuson-Moss claim.

159.    The Products are consumer products as defined in 15 U.S.C. § 2301(1).

160.    Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3) and utilized the Products for personal and household use and not for resale or commercial purposes.

161.    Plaintiffs purchased the Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

162.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

163.    The federal Magnuson-Moss Warranty Act ("MMWA" or "Act"), 15 U.S.C. §§ 2301-2312, is a consumer protection regime designed to supplement state warranty law.

164.    The MMWA provides a cause of action for breach of warranty, including the violation of express warranty, or other violations of the Act. 15 U.S.C. § 2310(d)(1).

165.    Defendant violated the express warranty because despite claiming the Products were "MAXIMUM STRENGTH" when they are not.

166.    In its capacity as warrantor, and by the conduct described herein, any attempt by Defendant to limit the warranties in a manner that it does is not permitted by law.

167.    By Defendant's conduct as described herein, Defendant has failed to comply with its obligations under its implied promises, warranties, and representations.

168.    Plaintiffs and the Classes fulfilled their obligations under the express warranties for the Products.

169.    As a result of Defendant's breach of warranties, Plaintiffs and the Classes are entitled to revoke their acceptance of the Products, obtain damages, punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2301.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated members of the Classes, pray for relief and judgment, including entry of an order:

A.    Declaring that this action is properly maintained as a class action,

29

certifying the proposed Class(es), appointing Plaintiffs as Class Representatives and appointing Plaintiffs' counsel as Class Counsel;

B.      Directing that Defendant bear the costs of any notice sent to the Class(es);

C.      Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendant to make full restitution to Plaintiffs and the members of the Class(es);

D.      Awarding restitution and other appropriate equitable relief;

E.      Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F.      Granting an Order requiring Defendant to fully and appropriately recall the Products and/or to remove the claims on its website and elsewhere, including "Maximum Strength" Representations regarding the Products;

G.      Ordering a jury trial and damages according to proof;

H.      Awarding Plaintiffs and members of the Class(es) compensatory and punitive damages, or statutory damages, as provided by the applicable state consumer protection statutes invoked above;

I.      Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J.      Awarding attorneys' fees and litigation costs to Plaintiffs and members of the Class(es);

K.      Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

L.      Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

FIRST AMENDED CLASS ACTION COMPLAINT                    CASE NO.: 5:22-CV-00983-EJD

Dated: June 30, 2022

Respectfully submitted,

*/s/ Trenton R. Kashima*
Trenton R. Kashima (SBN 291405)
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC**
401 West Broadway, Suite 1760
San Diego, CA
Tel: (714) 651-8845
Email: tkashima@milberg.com

Jonathan Shub (SBN 237708)
Kevin Laukaitis (admitted *pro hac vice*)
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

Nick Suciu*
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nsuciu@milberg.com

Charles E. Schaffer (admitted *pro hac vice*)
David Magagna (admitted *pro hac vice*)
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
Email: cschaffer@lfsblaw.com
        dmagagna@lfsblaw.com

*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs and Putative Class Members*

31